IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE RAMOS GARCIA,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ROSANNE CAMPBELL, Warden,<br><br>　　　　Respondent.　　　　　　　　　／ | No. C 06-7239 CRB (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

　　　Petitioner, Felipe Ramos Garcia, was charged with four counts of forcible child molestation, in violation of California Penal Code section 288 subdivision (b)(1), and one count of non-forcible child molestation, in violation of California Penal Code section 288 subdivision (a), in Santa Clara County Superior Court on March 30, 2001. All counts involve the same victim. On October 19, 2001, the day set for preliminary examination, the petitioner pled no contest to all five counts in exchange for a promise under a negotiated plea agreement that he would receive a sentence between twelve and thirty years in state prison. The trial court sentenced the petitioner to the maximum term provided by the plea agreement, thirty years in state prison.

　　　Petitioner appealed his conviction requesting the California Court of Appeal to independently review the record pursuant to People v. Wende, 25 Cal. 3d 436 (1979). Petitioner also filed his own supplemental brief alleging prosecutorial misconduct and ineffective assistance of counsel. On April 2, 2003, the California Court of Appeal affirmed

the judgment of the trial court and, on June 18, 2003, the California Supreme Court denied review.

Thereafter, petitioner filed a petition for a writ of habeas corpus with the Santa Clara County Superior Court alleging ineffective assistance of counsel. It was denied on May 13, 2004. Petitioner subsequently sought habeas relief, based on the same claims, from the California Court of Appeal and California Supreme Court, but was unsuccessful.

On November 22, 2006, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in this court alleging that: (1) the prosecutor committed misconduct during the sentencing hearing; and (2) that defense counsel provided ineffective assistance of counsel by waiving a formal sentencing hearing, by failing to object to prosecutorial misconduct and by failing to adequately investigate petitioner's statement to police and forensic evidence obtained from the victim. Per order filed on February 26, 2007, the court found the claims cognizable under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

## BACKGROUND

On June 19, 2001, petitioner entered a negotiated plea of no contest to five counts of child molestation with the understanding that he would receive a sentence somewhere between twelve and thirty years. Reporter's Transcript ("RT") 3-6. If convicted after a trial, petitioner faced a maximum sentence of forty years in prison. RT 4. When petitioner was asked if he understood the terms of the plea agreement, he replied "yes." RT 12. Defense counsel stated that petitioner was entering his plea "because he's concerned that things could get much worse" because petitioner could potentially face "substantial, additional charges" after testimony is heard. RT 19. After the plea was entered, the probation department interviewed the victim and petitioner, and recommended that petitioner receive a sentence of thirty years in prison. CT 23.

At the hearing on October 19, 2001, defense counsel requested a "formal hearing" prior to sentencing. RT 27. The trial court and parties agreed that the formal hearing could

be held on November 30, 2001. RT 28. But, because the victim's father was present at the sentencing hearing and wished to speak, the court determined that he could provide the victim impact testimony at that time. RT 28. The victim's father made the following statement to the trial court:

> [Victim's Father]: What I want to say is, being here right now is very hard for me and for my family, because we never expected something like this to occur within our family and that that animal would do something like that to my child. My girl didn't deserve that. We opened the doors of our home to that guy. We helped him. We all treated him like one of the family, myself, my wife and my in-laws, like he were one of our brothers. We never expected something like this to happen, even in our own house. I don't know how he was able to deceive us.
>
> I think that because of all the suffering that my daughter went through, I hope that you will give him the maximum punishment. He doesn't deserve any less than that. He even deserves death because psychologically, my child is very damaged.

RT 29-30.

The victim's father continued to explain how his child was suffering as a result of the molestation:

> [Victim's Father]: She has nightmares. Her grades in school are very low now. Just about the time that he started molesting my daughter, that's when her grades went down. She's just a ten-year-old girl and she had so much ahead of her. She wanted to get ahead in life and this guy didn't have to disturb her like this. I signed some papers so she'd be put in special classes. And this shouldn't have happened. It shouldn't have been like this.
>
> I wish you could see the pictures I brought for my daughter.

RT 30.

After the victim's father referenced the photographs, and the court agreed to look at them, the prosecutor stated:

> [Prosecutor]: Your Honor, just to let the Court know, the first number of photos are of the victim, and then the last few pages depict where the knife was found in the apartment, and the last page depicts the defendant's clothing and some underwear of Mr. Mendez's wife was found, along with the victim's underwear.

RT 30.

The victim's father then concluded his statement to the court:

> [Victim's Father]: As you can see, my daughter, she didn't deserve something like that. You can see it in the way she looks. She looks so sad

3

there. I can't imagine what it is – why it is. I couldn't figure it out earlier. She always looked so sad. She can't even smile.

When I started cleaning up the messes in that area where he had kept – where it was like a closet, that's where he used to keep his stuff, I found – I found something that belongs to my daughter. It's the earrings, bracelet, and buckle from her belt that she had lost.

And as you can see in the pictures, an abused girl, a ten-year-old girl, and frightened to death by this guy. He's threatened her saying that he was going to kill his parents and her family – her parents and her family. And as you can see in the picture, there's some knives, because this guy used to work in a restaurant. What kind of young girl expects a room like that with her knives where she's being abused?

I beg you to punish him to the maximum possible. I would like to say a lot more but it is too hard.

Thank you.

RT 31-32.

After the victim's father completed his impact statement, petitioner conferred with his counsel. RT 32. Defense counsel then told the court that petitioner wanted to "have sentencing today and forgo the formal hearing." RT 32. When asked by the court if petitioner wanted to say anything before sentence was passed, petitioner stated: "I accept everything that was said before and I will also accept whatever sentence you will give me today, even if it's at the maximum." RT 32.

The trial court sentenced petitioner to thirty years in state prison, the maximum term allowed under the plea agreement. The court explained, "I'm going to impose the maximum sentence because of the parent's comments to me about how dramatically these incidents affected their daughter and how her life has been disturbed by these events. I hope that they have the resource so they can take her to counseling." RT 34.

**DISCUSSION**

A. <u>Standard of Review</u>

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

4

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies that correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." 529 U.S. at 409.

The only definitive source of clearly established federal law under 28 U.S.C § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B. Claims & Analysis

Petitioner seeks federal habeas corpus relief under § 2254 on the basis of: (1) prosecutorial misconduct; and (2) ineffective assistance of counsel.

1. Prosecutorial Misconduct

Petitioner claims that the prosecutor engaged in misconduct because the victim's father made two references to a knife while making an impact statement at the sentencing

5

1 hearing. Petitioner argues that the state "breached the plea agreement during sentencing
2 when it brought in facts not already in evidence for the sole purpose of so enraging the court
3 as to cause petitioner to receive a harsher sentence." Pet. at 4. Specifically, petitioner argues
4 that the references to knives in the photos brought by the victim's father during impact
5 testimony and the prosecution's explanation of what the photos depicted were prejudicial
6 because the probation report did not mention the knives. Pet. at 5.

7      A defendant's due process rights are violated when a prosecutor's misconduct renders
8 a trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986); see Smith
9 v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of
10 alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the
11 prosecutor."). In order to establish a violation of due process under Darden, the remarks of
12 the prosecutor must have resulted in actual prejudice, i.e., it must have been improper and
13 must have infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir.
14 2005). To warrant habeas relief, the alleged misconduct also must have had a substantial and
15 injurious effect or influence in determining the jury's verdict. Johnson v. Sublett, 63 F.3d
16 926, 930 (9th Cir. 1995) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).
17 Petitioner's prosecutorial misconduct claim fails because the prosecutor's actions did not
18 amount to a violation of due process or actual prejudice.

19      The record shows that the prosecutor's actions were not improper. The prosecutor did
20 not offer the photographs of the knives to the court at the sentencing hearing. Rather, it was
21 the victim's father who offered the photographs and referenced them during his impact
22 testimony. "[A] next-of-kin impact statement is not evidence presented by the prosecution.
23 ... [T]he victim's family has the right to make such a statement regardless of the prosecutorial
24 agency that handles the case." People v. Petrisca, 138 Cal. App. 4th 189 (2006). Any
25 statement made by the prosecutor referencing the pictures was merely a statement to the
26 court explaining what the victim's father was offering. The prosecutor stated: "[J]ust to let
27 the court know, the first number of photos are of the victim, and then the last few pages
28

6

depict where the knife was found in the apartment." RT 30. The prosecutor was not engaging in improper conduct.[1]

Importantly, petitioner's prosecutorial misconduct claim fails because the alleged misconduct did not have a substantial injurious effect or influence in determining the court's sentence. See Johnson, 63 F.3d at 930. Petitioner claims that he would have received a shorter sentence under the plea agreement if the photographs were not referenced. Pet. at 6. But, when the court imposed the maximum sentence allowed under the plea agreement, it explained that it was "because of the parent's comments to me about how dramatically these incidents affected their daughter and how her life has been disturbed by these events." RT 34.

Petitioner is not entitled to federal habeas relief on his prosecutorial misconduct claim. The state court's rejection of the claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d).

2. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel because counsel: (1) failed to object to prosecutorial misconduct; (2) waived the formal sentencing hearing; and (3) failed to adequately investigate petitioner's statement to the police and forensic evidence obtained from the victim.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that if fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 US 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

---

[1] Even if the prosecutor had offered the photographs, his actions would not constitute "improper conduct" because the plea agreement did not preclude additional evidence from being offered at the sentencing hearing. Petitioner was only assured that the prosecution would be "barred from adding any new charges," that the "entire sentencing process would be open to argument," and that petitioner may face "witnesses." RT 5.

7

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. Id.

### a. Failure to Object to Prosecutorial Misconduct

Petitioner claims that he received ineffective assistance of counsel because his lawyer failed to preserve the issue of prosecutorial misconduct. Pet. at 8. This claim fails under both prongs of the Strickland test. First, petitioner cannot show that counsel's performance was deficient or fell below an objective standard of "reasonableness" under prevailing professional norms. As demonstrated above, the prosecutor did not engage in prosecutorial misconduct because the photographs of the knives were introduced by the victim's father during impact testimony. They were not introduced by the prosecution. There was no basis for an objection. "[T]he failure to take a futile action can never be deficient performance." Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

Second, petitioner cannot show how he was prejudiced by the failure to preserve the issue of prosecutorial misconduct. The statements by the trial court indicated that the reason for the imposition of the maximum sentence under the plea agreement was based on how petitioner's actions affected the victim. There is no reasonable probability that, but for the photographs of the knives, the result of the sentencing proceeding would have been different. See Strickland, 466 U.S. at 694.

### b. Waiver of the Formal Sentencing Hearing

Petitioner claims that he received ineffective assistance of counsel because counsel waived the formal sentencing hearing. This claim also fails. Petitioner argues that defense counsel's performance was deficient because he waived the formal hearing without consulting him. Not so. The record shows that prior to waiving the formal sentencing hearing, counsel used the interpreter during an off-the-record discussion. RT 32. When petitioner was asked by the court if he wished to say anything, he replied: "I accept everything that was said before and I will also accept whatever sentence you will give me today, even if it's at the maximum." RT 32.

8

1   In addition, there is no indication whatsoever that waiving the formal sentencing
2 hearing was prejudicial.  Petitioner's thirty-year sentence was recommended by the probation
3 department and was within the range of his plea agreement.  There is no reasonable
4 probability that, but for counsel's waiver of the formal sentencing hearing, the result of the
5 sentencing would have been different.  See Strickland, 466 U.S. at 694.

### c. Failure to Adequately Investigate

Petitioner claims that he received ineffective assistance of counsel because his lawyer failed to conduct an adequate pretrial investigation in regards to petitioner's statement to the police and forensic evidence obtained from the victim.  He argues that such failure to investigate renders his plea of nolo contendere unknowing and involuntary.  Specifically, petitioner argues that counsel should have inquired into the adequacy of the translation services provided by the police when petitioner waived his Miranda rights and confessed, and should have disputed the findings of the Sexual Assault Response Team ("SART") nurse's findings.  Pet. at 17.  Petitioner's claims are without merit.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 691.  Accordingly, a decision not to investigate, when it is unlikely to uncover evidence that would have supported a defense, is not outside the range of reasonable trial decisions and does not amount to prejudice.  Wilson v. Henry, 185 F.3d 986, 989 (9th Cir. 1999).  Here, petitioner has offered no evidence showing what would have been uncovered had counsel investigated his confession.  Nor has he offered any evidence showing, or even suggesting, that the translation services were inadequate.  And in support of his SART report claim, petitioner provides no expert opinion whatsoever contradicting the findings of the state's expert.  He merely states that the SART findings could have been challenged.  Petitioner's mere speculation is not enough.  See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("speculation about what an expert could have said is not enough to establish prejudice").  Petitioner has not shown that there is a reasonable probability that, but for counsel's failure to

9

investigate, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (applying Strickland to guilty plea context).

The Santa Clara Superior Court similarly rejected petitioner's claim of ineffective assistance of counsel based on failure to investigate:

> Petitioner fails to meet his burden.  Petitioner's complaint about the trial counsel's failure to investigate whether translations were properly made or whether Petitioner was properly advised of his Miranda right is completely speculative.  Petitioner has provided no proof that that the translation services used were not accurate or that he was not properly advised of his Miranda rights.  Moreover, Petitioner's's claim that his trial counsel failed to hire and expert to contravene the findings of the state SART nurse based upon an alternate theory of injury to the victim's vaginal area is also moot given that Petitioner confessed to the crimes.

In re Garcia, No. BB152828, slip. op. at 4 (Cal Super. Ct. May 13, 2004) (Resp't Ex. 8).

Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of counsel.  The state court's rejection of the claims was not contrary to, or involved an unreasonable application of, the Strickland standard. See 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, this Court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

Dated:  April 8, 2008

CHARLES  R. BREYER
United States District Judge

G:\CRBALL\2006\7239\Garcia.Denial.v.1.wpd   10